## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD S.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    25-cv-4207** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                    **January 28, 2026**

Edward S. (Plaintiff) brought this action seeking review of the Commissioner of Social Security Administration's ("SSA") decision denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the "Act"). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 10) is **GRANTED**.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed the instant application for disability benefits on August 8, 2022, alleging disability beginning January 15, 2021, due to sciatica and shooting pain throughout his upper extremities. (R. 193-99, 229). Plaintiff's application was denied at the initial level on February 21, 2023, and upon reconsideration on October 5, 2023. (R. 56-74). Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 90). Plaintiff, represented by counsel, as well as a vocational expert testified at the July 17, 2024, administrative hearing. (R. 31-55). On July 23, 2024, the ALJ issued a decision unfavorable to Plaintiff. (R. 15-30). Plaintiff appealed the ALJ's decision, and the Appeals Council denied

Plaintiff's request for review on May 27, 2025, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On July 27, 2025, Plaintiff filed a complaint in this Court and consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) two days later.  (Compl., ECF No. 1; Consent, ECF No. 4).  On October 23, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 10).  The Commissioner filed a Response on November 12, 2025.  (Resp., ECF No. 11).  Plaintiff filed a Reply on November 26, 2025.  (Reply, ECF No. 12).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on February 20, 1981, and was 41 years old on the date the application was filed.  (R. 24).  He obtained a GED in lieu of a high school diploma.  (R. 36).  He has no past relevant work.  (R. 24).

### A.    Medical Evidence

Plaintiff was involved in a motor vehicle accident on August 9, 2019, and subsequently developed numbness and back, buttock, and leg pain, for which he received treatment.  (R. 308). The results of a November 18, 2019, MRI of Plaintiff's lumbar spine identified disc degeneration at L5-S1 with broad disc protrusion, and disc bulging to the left at L4-5.  (R. 307).

On December 10, 2019, Plaintiff presented to Gerald E. Dworkin, D.O., of Open MRI of

---

[1]  Because Plaintiff's request for review implicates only his physical impairments, the Court summarizes the evidence relating to any mental impairments only as necessary to adequately address the issues presented in this appeal.

Bala Cynwyd.  Upon physical examination, Dr. Dworkin noted that Plaintiff: had pain during flexion/extension of the lumbar spine; had pain-free range of motion at the hip; had "positive straight leg raising with dural tension sign on the right side"; and displayed dysesthesias at L3-4 distribution and no focal motor weakness.  (R. 308).  Due to Plaintiff's increasing back and limb pain, Dr. Dworkin performed electrodiagnostic testing.  (*Id.*).

EMG findings showed an increase in abnormal activity in the right quadriceps, right anterior tibialis, and right lumbosacral paraspinal muscles.  (*Id.*).  The left quadriceps, left anterior tibialis, left lumbosacral paraspinal muscles, bilateral gastrocnemius, and hallux muscle each were consistent with normal spontaneous activity and motor function.  (*Id.*).  Based on the EMG results and his own physical examination, Dr. Dworkin assessed Plaintiff with right L3-4 lumbosacral radiculopathy but noted there was no evidence of left lumbosacral radiculopathy, bilateral lumbosacral plexopathy, peripheral polyneuropathy, or myopathy.  (R. 308-09).

On October 4, 2021, Plaintiff presented to Madiha Aslam, M.D., of Mercy Catholic Medical Center in Darby, Pennsylvania complaining of constant right shoulder pain.  (R. 372). A scan revealed calcific tendinitis.  (R. 374, 386).

On February 7, 2023, State agency consultant David Dzurinko, M.D., examined Plaintiff. At the consultative examination, Plaintiff stated that he experienced some right leg pain as well as chronic lower back pain that fluctuated in severity between 9/10 and 10/10.  (R. 385).  After reviewing Plaintiff's past medical history, Dr. Dzurinko noted that Plaintiff's activities of daily living (ADLs) included occasional light cleaning, assisted shopping, personal hygiene tasks such as showering and bathing, driving, watching TV, and reading.  (R. 386).  Dr. Dzurinko noted that it was difficult for Plaintiff to stand for long periods of time or bend and lift things (including his 20-pound infant).  (*Id.*).  He also noted that Plaintiff reported being unable to cook or do laundry. (*Id.*).  Upon examination, Dr. Dzurinko observed that Plaintiff: did not appear to be in acute

3

distress; had a mildly antalgic gait; walked on his heels and toes without difficulty; had a 50 percent squat; needed help getting on and off the exam table; had difficulty rising from his chair due to pain; had no evident joint deformity or muscle atrophy; had no scoliosis or kyphosis, or abnormality in the thoracic spine.  (R. 387-87).  Right-sided straight leg raises were positive for radiating pain down the right lower extremity at 50 degrees supine.  (R. 388).  He diagnosed Plaintiff with chronic pain, right lower extremity sciatica, a bulging disc at L4-L5, a broad based protrusion at L5-S1, and right L3-L4 lumbar radiculopathy.  (R. 388).  In an attached medical source statement, Dr. Dzurinko opined that Plaintiff could: continuously lift and carry up to 50 pounds; sit for 30 minutes at a time, stand or walk for five to 15 minutes at a time, and stand or walk for one to two hours total in an eight hour workday; continuously reach, handle, feel, finger, push, and pull with both upper extremities and  operate foot controls bilaterally; occasionally balance, stoop, kneel, crouch, and crawl; and never climb stairs, ramps, ladders, or scaffolds.  (R. 390-93).  He also noted Plaintiff would be subject to various environmental limitations.  (R. 394).

Plaintiff then presented to Dr. Dzurinko again on September 7, 2023, for a second consultative examination.  Plaintiff again complained of chronic lower back and leg pain, pain radiating from his neck through his arms, sciatica, and musculoskeletal spasms.  (R. 406).  At the examination, Plaintiff reported that due to his pain, he: could sit for 15 minutes, stand for one to five minutes, and walk from his front door to his car (approximately 100 feet); spent approximately two to three hours a day recumbent; cared for his child but had trouble getting up from the floor and lifting him; required daily ice and massage therapy to treat his neck and back pain; and needed help dressing.  (R. 406-08).  Dr. Dzurinko observed that Plaintiff had an antalgic gait, could not walk on heels and toes due to pain, and had difficulty rising from his chair.  (R. 408).  However, he also noted that Plaintiff did not require assistance getting on and

off the exam table and had a normal stance.  (*Id.*).  Plaintiff declined to squat due to pain.  (*Id.*).

Further, he had positive straight leg raises at 30 degrees bilaterally in the supine position and at

90 degrees on the left while in the seated position.  (R. 409).  He displayed tenderness in the

lumbar area, demonstrated sensory deficits to pinprick pain and vibration in the bilateral upper

extremities, showed lost sensitivity to pain in all four extremities, exhibited reduced strength in

the right upper extremity due to shoulder pain, and had reduced bilateral lower extremity

strength.  (R. 409-10).  However, he had full grip strength and finger dexterity bilaterally.  (R.

410).  Based on these observations, Dr. Dzurinko opined that Plaintiff could: never lift or carry

any weight; sit for fifteen minutes, stand between one and five minutes, and walk at most 100

feet at one time without interruption; sit for three hours and stand or walk for 30 minutes total in

an eight-hour workday; never reach overhead, push, or pull, and occasionally reach in all other

directions, handle, finger, and feel with the right upper extremity; occasionally push and pull,

frequently reach in other directions, handle, finger and feel, and continuously reach overhead

with the left upper extremity; occasionally operate foot controls bilaterally; and never balance,

stoop, kneel, crouch, crawl, or climb stairs, ramps, ladders, or scaffolds.  (R. 411-14).  Further,

he needed to rest in a recumbent position between two and three hours per day.  (R. 412).

On February 17, 2023, State agency consultant Wadicar Fabian Nugent, M.D., performed

a physical examination of Plaintiff.  (R. 57-64).  He noted that Plaintiff had severe medically

determinable impairments in the form of obesity and a skeletal spine disorder, and that Plaintiff's

pain limited his ability to lift, walk, bend, climb stairs, use his hands, sit, stand, clean, and text.

(R. 59-60).  Dr. Nugent also noted that Plaintiff indicated that he was not taking any medications

to treat his pain at that time.  (R. 60).  Ultimately, Dr. Nugent opined that Plaintiff could:

occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds; push and/or pull with

upper and lower extremities without limitation; sit for a total of six hours and stand or walk for a

total of four hours in a normal workday; could never climb ladders, ropes, or scaffolds; and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  (R. 60-61).  Upon reconsideration on October 2, 2023, State agency consultant Jennie-Corinne Rebecca Baublitz-Brenenborg, D.O., noted additional muscle, ligament, and fascia disorders but offered nearly identical findings regarding Plaintiff's work-related functional capacity.  (R. 65-74).

### B.    Nonmedical Evidence

The record also contains nonmedical evidence.  Plaintiff testified at the July 17, 2024, administrative hearing as to his work history, the severity of his medical issues, and how those medical issues affected his functional capacity.  (R. 31-55).  Plaintiff testified that he received his GED in lieu of his high school diploma.  (R. 36).  Before his accident in 2019, Plaintiff worked as a landscaper.  (R. 41).  After his accident, however, Plaintiff began noticing that he was unable to do as many physical activities as before.  (*Id.*).

Plaintiff testified that since the motor vehicle accident in 2019, he experienced chronic leg, back, and shoulder pain, numbness in his hands, and stress.  (R. 36, 38).  Plaintiff noted that he had difficulties standing, walking, crawling, and generally moving around, and that these limitations were exacerbated by his weight (approximately 215 pounds, standing at 5'4").  (R. 38).  His ADLs included: taking care of his child; getting up and stretching as much as possible; walking with his child; walking up and down the stairs; and taking his girlfriend to work.  (R. 39-40).  According to Plaintiff, sitting or standing for too long caused him pain, so he spent much of the day attempting to find the right balance.  (R. 39-40).  He noted that he: was able to stand for at most 10 minutes at a time before his legs and feet begin to hurt; could only sit for 10 to 15 minutes before needing to get up and move around; and could only walk for "half a block" before experiencing discomfort.  (R. 40-41).  He also noted that although he was still able to lift his 20-pound child, it was difficult for him.  (R. 40).  He testified that he could "regularly" lift

about 10 pounds, but that anything more than that amount could aggravate his back pain and cause radiculopathy down his leg. (*Id.*). According to Plaintiff, he was unable to work a sedentary job that would primarily require him to use his hands due to his frequent hand numbness. (R. 41-42).

Notwithstanding his chronic pain, Plaintiff confirmed that at the time of the hearing he was not taking any medications to treat it. (R. 37). He maintained that he had stopped using muscle relaxers or other pain medications for two reasons: (1) he did not want to mix them with the insulin he was taking for his diabetes; and (2) he was fearful they would make him drowsy— something he hoped to avoid given that he was responsible for taking care of his infant. (R. 37-39).

Plaintiff also completed two adult function reports on September 19, 2022, and on May 30, 2023. (R. 239-46, 259-66). In the first report, he noted that: his pain made it difficult for him to sit or stand for extended periods; he did not prepare meals for himself because it was difficult for him to "stand and cook"; the only household chore he could perform was cleaning his room; and his daily activities included building race drones, watching television, playing video games, going out to eat, and sending text messages. (R. 239-43). According to Plaintiff, his impairments affected his ability to lift, squat, bend, stand, sit, climb stairs, and use his hands. (R. 244). He also noted that he was not able to walk "far," and that he needed to rest for 30 minutes before he could resume walking. (*Id.*). In the second report, he added that: his daily routine had expanded to include taking care of his child, though it was difficult to lift him at times; he no longer went out to social events; it was difficult for him to lift his legs to dress himself; his range-of-motion limitations made it difficult for him to use the toilet; and he was able to do laundry along with "some cleaning tasks." (R. 259-66).

### III.    ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which he made the following findings:

1.    The claimant has not engaged in substantial gainful activity since June 8, 2022, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: disorders of the spine, right shoulder abnormality, and obesity (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally reach overhead on the right. The claimant can frequently reach forward and laterally. He can frequently handle and finger. The claimant must avoid concentrated exposure to extreme cold and vibration. He must avoid even moderate exposure to unprotected heights and hazardous moving machinery. In addition, the claimant needs to stand and stretch two to three minutes every thirty minutes.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on February 20, 1981 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a limited education (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since June 8, 2022, the date the application was filed (20 CFR 416.920(g)).

(R. 20-26).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 26).

8

## IV.    LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work.  If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.  If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

Plaintiff asserts a single claim for review: the ALJ erred in finding Dr. Dzurinko's September 2023 medical opinion unpersuasive. (Pl.'s Br., ECF No. 10, at 3-9).

### A.    The Parties' Arguments

According to Plaintiff, Dr. Dzurinko's September 2023 opinion was "more consistent with a finding that Plaintiff was disabled" than was his February 2023 opinion and the ALJ did not sufficiently articulate his rationale for crediting the earlier opinion over the later one. (*Id.* at 6, 9). Specifically, Plaintiff argues that the ALJ: (1) failed to address the September 2023 opinion's supportability or consistency—the two most important factors in determining the persuasiveness of a medical opinion; and (2) failed even to cite to any portions of the record that support the decision to reject the latter opinion. (*Id.*). According to Plaintiff, the fact that these opinions were not fully consistent was an insufficient reason to reject the more limiting September 2023 opinion. (*Id.* at 6-7). He acknowledges that the ALJ rejected this opinion as inconsistent with Plaintiff's testimony that he could lift his 20-pound son, but he contends: (1) that this is a misrepresentation of his testimony that he could only pick up the child for a short time and was unable to walk around while carrying him; and (2) that even if true, this sole fact cited by the ALJ would not be a legitimate basis for rejecting the September 2023 opinion. (*Id.* (citing R. 24, 43)). Ultimately, Plaintiff argues that the ALJ merely generalized to the record as

a whole, which the applicable regulations and caselaw clearly forbid.  (*Id.* at 6 (citing *Stellar v. O'Malley*, No. 23-CV-2361, 2024 WL 1520963, at *10 (E.D. Pa. Apr. 5, 2024))).

The Commissioner responds that substantial evidence supported the ALJ's decision to reject the September 2023 opinion for three reasons: (1) Plaintiff did not point to sufficient record evidence of disability; (2) the caselaw relied upon by Plaintiff is "inapposite"; and (3) the ALJ correctly considered the record evidence, including Plaintiff's testimony pertaining to his ability to occasionally lift his child, and therefore rightly rejected Dr. Dzurinko's more limiting September 2023 opinion.  (Resp., ECF No. 11, at 7-10).

First, the Commissioner argues that the only evidence Plaintiff points to in support of his position is Dr. Dzurinko's September 2023 check-the-box opinion, which is weak evidence at best.  (*Id.* at 7 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).  He maintains that Plaintiff cited no evidence consistent with Dr. Dzurinko's opinion "simply because there is none."  (*Id.* at 8).  According to the Commissioner, this implicit concession that no such evidence exists proves that the outcome of this case could not be different on remand.  (*Id.* at 7-8).  Piggybacking on this argument, he then contends that the caselaw Plaintiff cites is distinguishable from the facts present in the instant case—specifically, that in contrast to Plaintiff, the claimants in those cases actually cited to record evidence that supported a finding of disability.  (*Id.* at 9).  Finally, the Commissioner argues that the ALJ correctly considered Plaintiff's testimony regarding his ability to lift his son.  (*Id.* at 10).  According to him, in finding that Plaintiff was capable of only sedentary work, the ALJ implicitly credited this testimony.  (*Id.* (citing *Simmonds*, 807 F.2d at 58)).  The Commissioner concludes that this determination satisfied the ALJ's duty to consider the consistency of the September 2023 opinion with other relevant record evidence.  (*Id.* (citing *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024))).

**B.      Analysis**

The ALJ is responsible for fashioning a claimant's RFC.  A claimant's RFC is what he can still do despite his established impairments.  20 C.F.R. § 416.945(a)(1).  In making an RFC determination, the ALJ must consider all evidence before him.  *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999).  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); 20 C.F.R. § 416.945(a).  An ALJ must consider the medical opinions together with the rest of the relevant evidence and explain the weight given to those opinions in his decision.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011).  While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."  *Id.* at 361.  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."  *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)).  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.  *See, e.g.*, *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

The social security regulations "require[] an ALJ to offer 'a narrative discussion describing how the evidence supports'" the limitations imposed.  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996)).  An "ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant

evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'" *Mason*, 994 F.2d at 1067 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)).

When evaluating medical evidence, the most important factors are supportability and consistency, and the ALJ must explain in the decision how he considered these factors for a medical source's opinions or prior administrative findings. 20 C.F.R. § 416.920c(a)-(c). The remaining factors include the medical source's relationship with the claimant, the medical source's specialization, and other factors that tend to support or contradict the medical opinion. *Id.* at § 416.920c(c). An ALJ, in his discretion, need only reference these other factors if he finds that two medical opinions about the same issue are equally persuasive, well-supported, and consistent with the record evidence. *Id.* at § 416.920c(b)(3).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [this] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119). The ALJ must provide "not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."). "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.*

Based on the above principles, the ALJ erred in evaluating the medical evidence and rejecting Dr. Dzurinko's September 2023 opinion. In evaluating the medical evidence broadly, the ALJ surveyed the relevant medical opinions (including those of Drs. Dzurinko, Nugent, and

Baublitz-Brenenborg), other notes from the medical record (including the scans indicating various musculoskeletal issues), and Plaintiff's own testimony regarding how his physical impairments affected his functional capacity. (R. 22-24). Ultimately, the ALJ determined that although the record evidence illustrated that Plaintiff had physical limitations, the totality of the evidence still supported the conclusion that he could perform sedentary work with certain restrictions. (R. 22-24).

Regarding Dr. Dzurinko's opinions specifically, the ALJ found the February 2023 opinion persuasive and rejected the more restrictive September 2023 opinion. (R. 23-24). Those opinions are materially distinct in two ways: (1) in February 2023, Dr. Dzurinko opined that Plaintiff could continuously lift up to 50 pounds, whereas in September 2023, he opined that Plaintiff could lift no weight; and (2) in September 2023, he opined that Plaintiff had slightly more significant sit/stand limitations and, notably, would require a period between two and three hours daily to rest recumbent—a limitation he had not included in his earlier opinion. (R. 23-24, 383-401, 404-21). In finding the February 2023 opinion persuasive, the ALJ stated that it was "based upon a personal exam of [Plaintiff] and supported by his examination findings and radiological scans." (R. 23). Then, in rejecting the September 2023 opinion, the ALJ stated in pertinent part: "The undersigned finds this opinion to be [un]persuasive as his findings of severe limitation are contradictory to his opinion seven months earlier and is further contradicted by [Plaintiff's] hearing testimony that he could lift his twenty-pound infant child to change his diaper." (R. 24).

This explanation falls short of the ALJ's duty to adequately explain: how he considered the September 2023 opinion, Dr. Dzurinko's accompanying examination notes, and the related record evidence; what evidence he found convincing; and why. At best, his rationale for rejecting the more restrictive September 2023 opinion can be deduced as such: (1) it was less

persuasive than the February 2023 opinion, which was supported by Dr. Dzurinko's personal examination findings on that date as well as the various scans in the record; and (2) Plaintiff's own testimony, including that he occasionally could lift his 20-pound son, contradicted the September 2023 opinion. But this logic is inadequate for several reasons.

First, the ALJ's supportability analysis was insufficient as the ALJ simply omitted any discussion of whether and how Dr. Dzurinko substantiated his September 2023 opinion. Of note, in crediting the February 2023 opinion, the ALJ relied, in part, on the personal examination findings made by Dr. Dzurinko on that date. (R. 23 (finding that the February 2023 opinion was persuasive because it was "based upon a personal exam of the claimant . . .") (citing R. 383-401)). However, Dr. Dzurinko also performed a personal examination of Plaintiff in September 2023, noting that Plaintiff's pain and physical limitations had increased to some degree. (R. 406-10). Specifically, Dr. Dzurinko noted that: due to his pain, Plaintiff was unable to walk on heels and toes or squat; Plaintiff was positive for straight leg raises at 30 degrees bilaterally while supine and 90 degrees on the left while seated; and Plaintiff had lost sensitivity to pinprick pain in his lower extremities. (R. 408-10). Therefore, the September 2023 opinion was also supported by personal examination findings. Nonetheless, the ALJ failed to address the supportability of the opinion in light of these findings, or why Dr. Dzurinko's opinion based on his initial examination findings would be more persuasive than the one relying on updated findings made several months later. Ultimately, simply choosing between two differing opinions without explaining why one is more well-supported amounts to the impermissible arbitrariness that the regulations seek to preclude. *See Mason*, 994 F.2d at 1066 (An ALJ "cannot reject evidence for no reason or for the wrong reason").

Second, the ALJ's consistency analysis is incomplete as he failed to address a key aspect of the September 2023 opinion. The Commissioner argues that in citing Petitioner's testimony

regarding his ability to lift his 20-pound son, the ALJ satisfied his duty to evaluate the consistency of this opinion. (Resp., ECF No. 11, at 10). However, as Plaintiff notes, even if the ALJ's reliance upon this testimony was well-founded, it still does not constitute sufficient evidence to completely refute the opinion. Specifically, though the testimony may have supported the ALJ's determination to discredit the finding that Plaintiff could lift and carry no weight, it did not suffice to similarly dismiss the work-preclusive[2] finding that he had to rest recumbent for two to three hours daily because the ability to lift 20 pounds is not necessarily inconsistent with the need for a substantial rest period throughout the workday. And simply put, the ALJ did not engage with this portion of the September 2023 opinion at all. He never discussed this limitation, nor did he offer an explanation why it should not be credited and therefore included in Plaintiff's RFC. Though the ALJ was not required to accept this portion of the September 2023 opinion, he was at least required to consider it in conjunction with other record evidence and explain why he rejected it. *See Mason*, 994 F.2d at 1067 ("[An] ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'") (quoting *Kent*, 710 F.2d at 115 n.5); *see also Chandler*, 667 F.3d at 361 (noting it is well-established that an ALJ is free to reject a medical source opinion but in so doing must indicate why evidence was rejected so that a reviewing court can determine whether "significant probative evidence was not credited or simply ignored.").

The Commissioner attempts to evade this conclusion via several avenues. First, he argues that Plaintiff offered insufficient record evidence in support of his arguments or an eventual finding of disability. (Resp., ECF No. 11, at 6-8). Instead, according to the

---

[2] The VE testified at the administrative hearing as to the work-preclusive effect of such an off-task limitation. (*See* R. 48-53).

Commissioner, Plaintiff relies solely on the September 2023 opinion—a checkbox form opinion constituting weak evidence at best.  (*Id.* at 7).  In conjunction with this argument, the Commissioner also argues that the caselaw Plaintiff relies upon is inapposite (again because Plaintiff fails to point to sufficient record evidence that would support his position).  In sum, these arguments challenge whether Plaintiff made a *prima facie* case for disability.  Both these related arguments fail for the same reason: they are belied by the record and by Plaintiff's brief.[3]  Plaintiff does not purport to rely solely on the September 2023 opinion but instead also cites his own testimony as to the severity of his symptoms which, if accepted, would support his claim for disability.  (Pl.'s Br., ECF no. 10, at 6-9); *see also Mason*, 994 F.2d at 1067 (an ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence.").  Moreover, Plaintiff submitted adequate record medical evidence to make out a *prima facie* case for disability, including: (1) the scans indicating degenerative disc disease and lumbosacral radiculopathy, along with accompanying clinical notes indicating his symptoms were getting worse, and (2) various other treatment notes spanning 2019 to 2024.  (R. 306-82, 422-647).  Therefore, the contention that Plaintiff relies solely on Dr. Dzurinko's checkbox form opinion is patently false.

The Commissioner's last argument is that the ALJ actually "favorably credited" Plaintiff's testimony regarding his ability to only occasionally lift his 20-pound son.  (Resp., ECF No. 11, at 10).  However, as just explained, even if the ALJ's finding regarding this

---

[3]  Plaintiff's initial argument regarding the format of the opinion is also a red herring. The ALJ did not purport to rely upon the checkbox nature of Dr. Dzurinko's September 2023 opinion as a reason for discrediting it.  Therefore, the Commissioner's attempt to rely upon this as a means for affirming the ALJ's decision amounts to "nothing more than impermissible *post hoc* rationalization[.]"  *See Stellar*, 2024 WL 1520963, at *10 (emphasis in original) (citing *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("[P]ost-hoc rationalization[s]" are not considered because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision.")).

testimony was well-founded, it does not entirely refute the September 2023 opinion.

In sum, for the reasons laid out above, the ALJ erred in his evaluation of Dr. Dzurinko's September 2023 opinion. Accordingly, I remand this matter for further proceedings consistent with this memorandum opinion. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) ("The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review.") (quoting *Burnett*, 220 F.3d at 120); *Mason*, 994 F.2d at 1067 ("[An] ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'") (quoting *Kent*, 710 F.2d at 115 n.5); *cf. Byrd*, 2024 WL 4631645, at *9 (acknowledging that an ALJ may find only certain portions of a medical opinion persuasive).

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**. An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge